SIGNED this 7th day of June, 2013

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| ROBERT LEE WHITAKER and PHYLLIS LUCILLE WHITAKER, | No. 09-50301 Chapter 7 |
| Debtors. | |
| ROBERT LEE WHITAKER and PHYLLIS LUCILLE WHITAKER, | |
| Plaintiffs, | |
| vs. | Adv. Pro. No. 13-5008 |
| BANK OF AMERICA, | |
| Defendant. | |

# M E M O R A N D U M

Appearances:

Dean Greer, Esq.  
Post Office Box 3708  
Kingsport, Tennessee 37664  
*Attorney for Plaintiffs*

Austin McMullen, Esq.  
1600 Division Street, Suite 700  
Nashville, Tennessee 37203  
*Attorney for Defendant*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** In this adversary proceeding, Robert Lee and Phyllis Lucille Whitaker (the "Debtors") seek an award of compensatory and punitive damages from Bank of America (the "Bank") for alleged contempt of the discharge injunction imposed by 11 U.S.C. § 524(a)(2). The Bank has moved for dismissal and asserts, in part, that any remedy for a violation of the discharge injunction must be pursued through a motion for contempt rather than an adversary proceeding. This court agrees, and concludes that the Debtors' adversary proceeding should be dismissed, without prejudice and with leave to file a motion for contempt as a contested matter. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (O).

I.

On February 12, 2009, the Debtors filed a voluntary petition for bankruptcy relief under chapter 7. On the same day, the Debtors filed a statement of intention pursuant to 11 U.S.C. § 521(a)(2), indicating that they desired to retain the house and lot located at 3018 N. Hwy. 81, Fall Branch, Tennessee (the "Property"), by reaffirming the secured debt held by Countrywide Home Loans, Inc. Notwithstanding this stated intent, no reaffirmation agreement was filed in the case. On February 26, 2009, Countrywide, through a servicing agent, filed a motion for abandonment and relief from the automatic stay, alleging that the Debtors were in default and that the installments due April 1, 2008, and forward were in arrears. After no response to the motion was filed, this court entered an order on April 6, 2009, granting the motion. The Debtors were granted a discharge pursuant to 11 U.S.C. § 727 on May 22, 2009, and the bankruptcy case was closed on September 4, 2009.

More than three years later, on November 27, 2012, the Debtors filed a motion to reopen their bankruptcy case in order to commence this adversary proceeding against the Bank. After notice and a hearing, this court granted the motion by order entered January 8, 2013.

On February 6, 2013, the Debtors commenced the present adversary proceeding. Their complaint was met with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Without responding to the Bank's motion to dismiss, the Debtors filed an amended complaint on March 27, 2013, as permitted by Rule

15(a)(1)(B).

The Debtors allege in their amended complaint that the Bank is the successor in interest to Countrywide and that after the Debtors received their bankruptcy discharge, they were invited by the Bank to enter into its loan modification program.  Their efforts to do so were unsuccessful, and on March 31, 2011, the Debtors notified the Bank that they no longer desired to modify their loan and that they would be moving from the Property.  According to allegations in the amended complaint, from May 2009 forward and even after March 31, 2011, the Bank sent to the Debtors at least 45 monthly statements that showed the balance of the discharged debt as due and represented that the Debtors were liable for the debt.  The Debtors state that they no longer have all of these statements, but they attach to the amended complaint as Exhibit B a statement dated January 29, 2013, which the Debtors allege is representative of the monthly statements sent to them.  The Debtors also allege that the Bank sent them ten separate insurance notices, copies of which are attached as Exhibit C, which stated that the Debtors were obligated to provide proof of hazard insurance and/or would have to reimburse the Bank for force-placed insurance.  Lastly, the Debtors allege that, in addition to the written communications, agents of the Bank made an estimated 30 telephone calls to the Debtors, wherein they stated that the Debtors remained responsible for the discharged debt, that they had a duty to perform other contractual obligations, and that they would be held financially responsible for the failure to do so.

As to all of the alleged written and oral communications, the Debtors allege that the Bank made them with the intent and purpose of attempting to collect a discharged debt, such that the Bank is in contempt of the discharge order.  The Debtors seek an award of compensatory damages, including those for mental distress and anxiety, attorney's fees and costs, and punitive damages of $1,000 for each act or communication in violation of the discharge injunction.  Additionally, the Debtors request that the court enter an order requiring the Bank "to take any and all internal actions needed to prevent any further activity on this account, recognize that the debt is discharged, and to refrain from assigning, selling or otherwise disposing of this account to any third party."

After the filing of the Debtors' amended complaint, the Bank responded with an amended motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made

3

applicable by Federal Rule of Bankruptcy Procedure 7012(b). First, the Bank asserts that the Debtors' claims for relief are improperly pled because violations of the discharge injunction must be pursued through a motion for contempt rather than an adversary proceeding. Second, the Bank asserts that the facts alleged in the amended complaint do not establish violations of the discharge injunction. More specifically, as to the written communications alleged to have been sent by the Bank to the Debtors, the Bank argues that the statements were sent for informational purposes only and do not contain a demand for payment as a personal liability of the Debtors, such that the mailings are not prohibited communications. Alternatively, the Bank argues that the statements fall within the 11 U.S.C. § 524(j) exception to the discharge injunction. As to the insurance notices specifically, the Bank asserts that they refer to post-petition, post-discharge amounts incurred by the Bank to acquire force-placed insurance and, therefore, they were not discharged by 11 U.S.C. § 727(b). Lastly, as to the alleged telephone communications, the Bank asserts that the Debtors' allegations fatally lack specificity, making any right to relief based on these communications speculative.

In response, the Debtors request that the Bank's motion be denied. They assert that a violation of the discharge injunction may be litigated through an adversary proceeding, and that the amended complaint otherwise satisfies the pleading requirements of Federal Rule of Civil Procedure 8. The Debtors maintain that the § 524(j) exception is inapplicable, and characterize as erroneous the Bank's argument that the insurance obligations are not subject to the Debtors' § 727 discharge because they arose post-discharge. Each of these arguments will be addressed in turn.

II.

Federal Rule of Civil Procedure 12(b)(6), applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." As stated by the Sixth Circuit:

> The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the

4

>non-moving party. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983); 2 Moore's Federal Practice § 12.34[1][b] (Matthew Bender 3d ed. 2003). The court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Supreme Court of the United States has further stated that:

>To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

### III.

This court turns first to the question of whether this adversary proceeding must be dismissed because the relief sought may only be brought by a motion for contempt. As noted, the Debtors seek compensatory and punitive damages, as well as injunctive relief, for the Bank's alleged violation of the discharge injunction set forth in § 524(a)(2) of the Bankruptcy Code. This section provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). In *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-22 (6th Cir. 2000), the Sixth Circuit Court of Appeals held that § 524(a)(2) does not impliedly create a private right of action for an alleged violation of that provision. The court further held that § 105(a) of the Bankruptcy Code, which authorizes courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," may not be invoked to remedy breaches of § 524. *Id.* at 423 (citing 11 U.S.C. § 105(a)). In reaching this conclusion, the court observed that "the traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one."

*Id*. at 421. The context to which the court of appeals was referring was a lawsuit in federal district court that alleged violations of the discharge injunction and of the automatic stay, asserted a state law claim of unjust enrichment and sought an accounting. *Id*. at 420. Because *Pertuso* arose in this setting, it is not clear from the decision whether a lawsuit in bankruptcy court itself, via an adversary proceeding, would be a permissible means of pursuing violations of the automatic stay or whether the "traditional" means for remedying a contempt violation, by motion, is the only means, as the Bank in the present case alleges.

Several bankruptcy courts within this circuit have considered this issue, albeit with different conclusions. Several, including this jurist, have routinely permitted contempt actions to be brought as adversary proceedings. *See, e.g., Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 32-33 (Bankr. N.D. Ohio 2008); *Miles v. Clarke (In re Miles)*, 357 B.R. 446 (Bankr. W.D. Ky. 2006); *Bowen v. Mountain Commerce Bank (In re Bowen)*, No. 09-5092, 2010 WL 2430777, at *3 n.1 (Bankr. E.D. Tenn. June 11, 2010) (Parsons, J) (citing *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 56 (D.N.M. 2008)).[1] The rationale is that an adversary proceeding provides a party with more, rather than less, procedural protections than are available in a contested matter. *See Wagner v. Piper, Inc. (In re Wagner)*, 87 B.R. 612, 619 (Bankr. C.D. Cal. 1988). These courts have also reasoned that the mere fact that a debtor requests damages in addition to sanctions does not convert the suit into a private action since "the modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction . . . [and] reasonable attorney fees." *In re Motichko*, 395 B.R. at 30 (quoting *In re Miles*, 357 B.R. at 450). Consequently, concluded one court:

> To dismiss on procedural grounds alone would be to elevate form over substance. . . . Given that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party.

---

[1] In the *Bowen* decision, the court nonetheless granted the creditor's Rule 12(b)(6) motion to dismiss because the complaint failed to state a facially plausible claim for violation of the discharge injunction. *In re Bowen*, 2010 WL 2430777, at *1. Accordingly, the court's determination that an adversary proceeding was a permissible procedure became dictum.

*In re Motichko*, 395 B.R. at 33.

Other jurists, including Judge Shelley Rucker of this district, have disagreed, concluding that contempt proceedings must be initiated by motion, filed in the bankruptcy case itself. *See Frambes v. Nuvell Nat'l Auto Fin., LLC (In re Frambes)*, 454 B.R. 437, 440 (Bankr. E.D. Ky. 2011); *Chastain v. Bank of Am. Home Loans (In re Chastain)*, No. 11-1154, 2012 WL 2377467, at *5 (Bankr. E.D. Tenn. June 25, 2012) (Rucker, J); *Stevens v. Citizens Tri-County Bank*, No. 11-1049, 2011 WL 6812807, at *8 (Bankr. E.D. Tenn. Dec. 28, 2011) (Rucker, J); *Stooksbury v. FSG Bank, NA (In re Stooksbury)*, No. 08-3012, 2008 WL 2169452, *4 (Bankr. E.D. Tenn. May 22, 2008) (Stair, J) (observing that a contempt action is a contested matter but otherwise dismissing the complaint for failure to state a claim); *see also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011). These courts have concluded that it is inconsistent with *Pertuso* to permit a debtor to pursue a private right of action in the context of an adversary proceeding. *See, e.g.*, *In re Frambes*, 454 B.R. at 441.

The only court of appeals to address this specific issue has been the Ninth Circuit in the fairly recent *Barrientos* decision. 633 F.3d at 1188. In *Barrientos*, a discharged chapter 7 debtor filed an adversary proceeding against Wells Fargo Bank, asserting a single cause of action for violation of § 524(a)(2) and "seeking an injunction, a 'coercive fine,' declaratory relief, and attorney's fees." *Id.* The bankruptcy court granted the defendant's Rule 12(b)(6) motion to dismiss, citing *Walls v. Wells Fargo Bank, N. A*, 276 F.3d 502, 506-07 (9th Cir. 2002), for the proposition that § 105 of the Bankruptcy Code creates no private right of action for a violation of § 524. Upon appeal, the district court affirmed, noting that the appropriate remedy is to seek a contempt order directly in the bankruptcy court. *Barrientos*, 633 F.3d at 1188.

Upon further appeal to the Ninth Circuit Court of Appeals, the debtor argued that the *Walls* holding that there is no private right of action for damages under 11 U.S.C. § 524 does not necessarily preclude adversary proceedings as a vehicle to enforce the provision. *Id.* at 1189. While the court agreed that *Walls* had not expressly addressed this question, it found that *Walls* implicitly supported this conclusion. "[W]e reasoned that Congress did not intend for enforcement of a discharge order to be left to any other judge than the bankruptcy judge who issued the order . . .

7

which would be a possible result if an adversary proceeding were available to pursue contempt for violation of a discharge order." *Id.* at 1189 (internal citation omitted).

The Ninth Circuit further concluded that, even in the absence of *Walls*, the Federal Rules of Bankruptcy Procedure require a contempt action for violation of the discharge to be brought by motion in the bankruptcy case. *Id.* The court noted that Rule 9020 provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest," while Rule 9014 pertains to contested matters for which "relief shall be requested by motion." Additionally, observed the court, a matter qualifies as an adversary proceeding if it is listed in Rule 7001, yet contempt proceedings are not included in this list. Reading these provisions together, the *Barrientos* court concluded that "contempt proceedings . . . are contested matters that must be brought by motion in the bankruptcy case under Bankruptcy Rule 9014. Bankruptcy Rule 9020 in fact exists solely for the purpose of mandating this. It does nothing else." *Id.* at 1190.

The Ninth Circuit also rejected the debtor's argument that a contempt proceeding that includes a request for an injunction may be brought as an adversary proceeding because Rule 7001(7) identifies a "proceeding to obtain an injunction or other equitable relief . . . " as an adversary proceeding. *Id.* at 1190-91. The court of appeals observed that an injunction against violation of the discharge already exists under § 524(a)(2) of the Bankruptcy Code by operation of law, and that "[a]n injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief." *Id.* According to the court, "[t]he remedy for violating an injunction is not a repetitive injunction, but an order of contempt." *Id.* at 1190. The *Barrientos* court also rejected the argument that because Rule 9014 incorporates certain adversary proceeding rules under Part VII of the Federal Rules of Bankruptcy Procedure, any motion brought pursuant to Rule 9014 could impliedly also be brought as an adversary proceeding. "Such a construction does not follow, and if adopted it would obliterate the difference between contested matters and adversary proceedings, [and] obviat[e] the list under Rule 7001 . . . ." *Id.*

After careful consideration, this court is persuaded that the better rule is to require any effort to enforce the discharge order to be pursued solely by contempt motion filed in the bankruptcy case. Compliance with this rule will ensure complete faithfulness to *Pertuso* and the framework of the

Federal Rules of Bankruptcy Procedure. Moreover, this court is now convinced that the issue is more than a question of form. As discussed by Judge Mary Ann Whipple in *Lohmeyer*:

> The distinction between a statutory right of action and civil contempt is more than just nomenclature. "The primary purpose of a civil contempt order is to compel obedience to a court order and compensate for injuries caused by noncompliance." *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir.2000) (quoting *TWM Manuf. Co. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.1983)). The party alleging contempt has the burden of establishing contempt by clear and convincing evidence, *Rolex Watch U.S.A., Inc. v. Crowley,* 74 F.3d 716, 722 (6th Cir. 1996), not just by a preponderance of the evidence as is routine in civil matters. The sanctions for contempt are intended to be either compensatory, based on evidence of actual loss, *United States v. Bayshore Assocs., Inc.,* 934 F.2d 1391 (6th Cir. 1991), or coercive through payments to the court to abate violation of the order, *id.* at 1400. Punitive damages as requested in the ad damnum clause in this case are not compensatory in nature and raise the issue whether criminal sanctions are sought to punish the alleged contemnor. The weight of authority is that bankruptcy courts lack authority to punish and impose sanctions for criminal contempt. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1192–1195 (9th Cir.2003); *but see In re Perviz,* 302 B.R. 357, 373 (Bankr. N.D. Ohio 2003). Lastly, the imposition of sanctions for civil contempt is within the sound discretion of the bankruptcy court and reviewed for abuse of discretion. *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 78 (S.D. Tex. 2000).

*Lohmeyer v. Alvin's Jewelers (In re Lohmeyer)*, 365 B.R. 746, 749 n.2 (Bankr. N.D. Ohio 2007).

Applied to the case at hand, the Debtors argue that a dismissal at this stage would be a waste of time. They ask the court to permit the adversary proceeding to continue, asserting that the complaint reads as a motion, even though it was used to commence an adversary proceeding. The Debtors suggest that the court can simply determine if the Bank is in contempt of the discharge order in the context of this proceeding, without requiring the debtors to start over with a motion.

While the court is sympathetic to the Debtors and its counsel's argument in this regard,[2] it believes that dismissal is the proper avenue. Contrary to the Debtors' assertion, the complaint does not read like a motion for contempt. Paragraph 4 recites that "[t]his is a proceeding to recover a money judgment and for injunctive relief." Although the complaint contains an allegation that the

---

[2] Counsel for the Debtors in this action was also counsel to the plaintiffs in *Bowen*, wherein the court, albeit by dictum, concluded that an adversary proceeding was a permissible means of pursuing contempt of the discharge injunction. *See In re Bowen*, 2010 WL 2430777, at *1.

9

Bank has acted in contempt of the discharge order, there is no request that the court find the Bank in contempt. Instead, other than the injunctive and prospective relief sought, the only specific prayers for relief are that the court award the Debtors compensatory damages and punitive sanctions, and enjoin the Bank from any further account activity. Accordingly, dismissal without prejudice to the filing of a proper contempt motion is in order.

IV.

As previously stated, in addition to the argument that the Debtors are proceeding in an improper manner, the Bank also asserts that the amended complaint otherwise fails to state a claim for relief as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Because this action must be brought as a contested matter under Federal Rule of Bankruptcy Procedure 9014, Rule 12(b)(6) does not generally apply. *See* Fed. R. Bankr. P. 9014(b) (incorporating certain Part VII rules to contested matters, but not Federal Rule of Bankruptcy Procedure 7012). Although the court may order otherwise, *see* Rule 9014(b), the court believes that it would be inequitable to apply Rule 12(b)(6) standards to what will become a contested matter in the event the Debtors file a motion. However, the court will generally address the arguments raised in order to provide the parties some guidance in the event the Debtors plan to assert the same claims in the form of a motion.

It is well settled that "[a] creditor who undertakes to collect a discharged debt from a debtor violates the discharge injunction [of § 524(a)(2)] and is in contempt of the court that issued the discharge order." *In re Lohmeyer*, 365 B.R. at 749 (quoting *Fonner v. Overdorf (In re Fonner)*, 262 B.R. 350, 358 (Bankr. W.D. Pa. 2001)). Nonetheless, the bankruptcy discharge "extinguishes only one mode of enforcing a claim–namely, an action against the debtor in personam–while leaving intact another– namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150 (1991). Moreover, expressly excepted from the § 524(a)(2) injunction is an act by a secured creditor if—

> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;

>  (2) such act is in the ordinary course of business between the creditor and the debtor; and
>
>  (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). In order to sanction a party for violating § 524(a)(2), a court must determine that the creditor's actions are willful, that is, that it deliberately acted with actual knowledge of the bankruptcy case. *See In re Martin*, No. 11-8052, 2012 WL 907090, at *6 (B.A.P. 6th Cir. Mar. 7, 2012) (citing *In re Waldo,* 417 B. R. 854, 891 (Bankr. E.D. Tenn. 2009)). "As the party seeking relief, the debtor has the burden of proving that the creditor willfully violated the discharge injunction by clear and convincing evidence." *Id.* (citing *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). *Id.*

The Debtors allege that the Bank communicated with them in three different ways that violated the discharge injunction: (1) written monthly statements; (2) written insurance notices; and (3) telephone calls. As to the first, the monthly statements, the Debtors reference Exhibit B attached to the amended complaint. This is a three-page online account summary that the Debtors state is "representative of every monthly statement sent to [them] since at least May 2009." The first page of this summary lists the Debtors' names as customers, the street address of the Property, and account loan information including the loan date, original loan amount, and current interest rate. Under a heading entitled "Balance Information" is listed the principal balance of $119,959.18, the escrow balance of $(9,436.12), and the taxes of $622.50 paid the prior year. Although a space for a payoff is provided, the space is blank. The second page of the summary sets forth balance information for the Debtors' current personal checking and savings accounts, with a combined balance of $1,047.10. The third page is merely generic information as to FDIC insurance on the accounts.

The Debtors assert in their complaint that these monthly statements violated the discharge injunction because they "showed the current balance of the discharged debt as being due" and "contained statements that [the Debtors] remained responsible for the debt and/or had a duty to perform other contractual obligations or they would be held financially responsible for the failure." The Debtors' characterization of the monthly statements, however, is not supported by an

11

examination of Exhibit B. Not only does Exhibit B not contain a demand for payment, it also does not indicate that any amount is due. As discussed hereafter, merely providing the loan account balance and the escrow account balance in a written communication to a debtor who remains in possession of the property via a "ride-through,"[3] as in the present case, would not generally be a violation of the discharge injunction.

The discharge injunction does not prohibit all communications between a creditor and the debtor, only those designed " to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2); *see also In re Brown*, 481 B.R. 351, 358 n.10 (Bank. W.D. Pa. 2012) ("[C]ontact with the Debtor is not *per se* prohibited by the discharge injunction. Rather, demands for payment of discharged debts are prohibited."). Other than the fact that the monthly statements similar to Exhibit B were allegedly mailed to the Debtors, there is nothing in Exhibit B that suggests that the Debtors are personally liable for the balance, or that the Bank is requesting that the Debtors make payment on the account. Statements of an informational nature of this type are not generally actionable. *See In re Brown*, 481 B.R. at 359 (general informational letters that included a payoff amount but did not demand payment were not violations of the discharge injunction); *In re Zotow*, 432 B.R. 252, 258 (B.A.P. 9th Cir. 2010) (notice that merely set forth an increase in mortgage payments that included prepetition escrow arrears did not violate the automatic stay); *In re Pultz*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) (loan statement that merely provided the debtor notice of the amount due should she desire to redeem the property did not violate the automatic stay); *Ramirez v. GMAC (In re Ramirez)*, 273 B.R. 620, 624 (Bankr. D. Cal. 2002) (monthly billing statements sent to debtor who retained vehicle under ride through amounted to nothing more than an informative courtesy); *Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309, 314 (S.D. Fla. 2001) (although the automatic stay prohibits a mortgagee from exerting pressure on the mortgagor to repay an advance or escrow deficiency, it does not prohibit a mortgagee from merely providing necessary information or notice to a mortgagor of escrow deficiencies).

---

[3] A "ride-through" refers to the circumstance where a discharged debtor retains possession of a secured creditor's collateral and voluntarily continues to perform under the original agreement without reaffirming the debt. *See, e.g., In re Dumont*, 581 F.3d 1104, 1108 (9th Cir. 2009).

The Debtors point out that unlike the notices found acceptable by some courts, Exhibit B contains no disclaimer language that expressly states that it is not a demand for payment if the Debtors have filed for bankruptcy relief or have received a discharge. *See, e.g., In re Brown*, 481 B.R. at 359. While disclaimer language in a communication to a debtor who has received a discharge is always advisable, its absence does not automatically render the communication a *per se* violation of the discharge injunction.[4] In *Ramirez*, a debtor who retained an automobile subject to the lien of GMAC asserted that the monthly billing statements sent to him by GMAC violated § 524(a)(2). *In re Ramirez*, 273 B.R. at 623. The bankruptcy court disagreed, observing that there was nothing in the statements that suggested that the debtor was personally obligated to make any further payment to GMAC. According to the court, "GMAC's post-discharge statements were nothing more than a practical and lawful means to alert Mr. Ramirez to his monthly payment obligations if he wished to retain possession of the van. . . . Such statements harmlessly facilitate the decisions of debtors, such as Mr. Ramirez, whether to keep their vehicles post-discharge." *Id.* On appeal of that decision, the district court affirmed, stating:

> [T]o hold that a secured creditor is precluded from sending monthly billing statements to a debtor . . . would solely force debtors to guess, with little guidance, the due date and proper amount of their monthly payments. This would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors. This could not be the intent of Congress in passing 11 U.S.C. § 524(a)(2).

*Ramirez v. GMAC (In re Ramirez)*, 280 B.R. 252, 258 (C.D. Cal. 2002).

Decisions such as *Ramirez* were partially codified by Congress by the addition of § 524(j) to the Bankruptcy Code as a part of the 2005 amendments. *See* 60 Consumer Fin. L.Q. Rep. 272, 274 (Summer 2006). Section 524(j) provides a safe harbor for post-discharge communications between secured creditors and discharged debtors involving mortgages on the debtor's principal residence as long as the communication is in the ordinary course of business between the debtor and

---

[4] In a similar fashion, the existence of disclaimer language will not serve to insulate an otherwise improper demand for payment. *See In re Draper*, 237 B.R. 502, 505 (Bankr. M.D. Fla. 1999) (monthly invoices that set forth the amount of payments past due and asked the debtor to remit this amount using an attached payment coupon and enclosed envelope were geared toward collection of a debt, notwithstanding paragraph that acknowledged the debtors' bankruptcy and stated that the invoice was being sent for informational purposes only).

the creditor and limited to seeking payments in lieu of in rem relief. *See* 11 U.S.C. § 524(j). As noted, the Bank has raised § 524(j) as a defense, but there is no evidence before the court as to the "ordinary course of business" requirement, even if it were appropriate to evaluate this defense in the context of a Rule 12(b)(6) motion.

In apparent recognition of § 524(j)'s possible applicability, the Debtors argue that the section provides no protection to the Bank after they vacated the Property and advised the Bank that they would no longer be pursuing a loan modification. The Debtors assert that at this point the monthly statements served no purpose other than collection of the debt. In this regard, the amended complaint does not allege when the Debtors vacated the Property, only that they advised the Bank on or about March 31, 2011, that they were moving. Additionally, according to the amended complaint, the Bank has not yet foreclosed, such that presumably the Debtors remain owners of the Property, regardless of whether they are still living there. Whether the monthly billing statements continued to serve a informational purpose after the Debtors moved, or whether the statements became a demand for payment from the Debtors personally, will ultimately turn on a consideration of all the facts of the case. *See In re Culpepper*, 481 B.R. 650, 658 (Bankr. D. Or. 2012) ("Because of the variety of situations in which alleged violations of the discharge injunction can arise, such cases are very fact dependent.").

Turning next to the written communications regarding insurance, the Debtors allege in the amended complaint that the Bank sent ten separate notices informing them of their obligation to provide the Bank with "proof of hazard insurance and/or [the Debtors] would have to reimburse [the Bank] for force placed insurance." Copies of these alleged communications are attached to the amended complaint as collective Exhibit C. An examination of this exhibit reveals 12 separate communications regarding insurance with dates from November 19, 2009, through November 12, 2012. In general, some of the insurance letters reference the requirement under the Debtors' loan agreement that "acceptable insurance coverage must be maintained on your home at all times" and state that absent proof of acceptable coverage the Bank "will purchase Lender-Placed Hazard (homeowner's) Insurance at your expense and charge you for the cost of insurance." Other notices indicate that the Bank had in fact purchased insurance, list the amount, and state that "the cost of this coverage will be charged to you and has become an additional debt secured by your mortgage or

14

deed of trust." These notices also advise the Debtors that they could receive a full refund of the amount charged if they have their own insurance, but that if there are lapses the Debtors "are obligated by [their] loan documents to reimburse [the Bank] for the insurance charges" during the lapse period. Other communications advise the Debtors of a specific amount due to a lapse in insurance and inform the Debtors that "[y]ou are obligated by your loan documents to reimburse Bank of America for the advance of the insurance charges within 15 days, or your required monthly payment will be adjusted to collect the balance due."

The Bank asserts that the notices are not actionable because "there is no explicit demand for payment," as is evidenced by the fact that they do not include payment stubs or provide a payment address. The court does not believe that the lack of payment stubs or a payment address is determinative if the communications otherwise constitute a demand for payment from a discharged debtor. *See, e.g., In re Perviz*, 302 B.R. 357, 366 (Bankr. N.D. Ohio 2003) (insurance letters sent by creditor that stated "at your expense, we have purchased insurance to protect our interest" were aimed at collecting on creditors' debt, as opposed to merely being a service provided to the Debtors). Whether the notices were coercive or merely informational must await an evidentiary hearing when the notices can be considered in context.

The Bank's argument that collection of the force-placed insurance from the Debtors is not precluded as a matter of law because the charges arose post-discharge and the discharge only eliminated the Debtors' liability for debts that arose pre-petition has no merit. "A chapter 7 discharge relieves the debtor of personal liability for all claims or debts that arose before the filing of the petition, except for those specified under § 523." *In re Moreno*, 479 B.R. 553, 564 (Bankr. E.D. Cal. 2012); *see also* 11 U.S.C. § 727(b) ("discharge under . . . this section discharges the debtor from all debts that arose before the date of the order for relief"). A claim that arises out of a contract "ordinarily arises at the time the parties execute the contract, not when a subsequent contingency triggering the claim occurs. Therefore, even if a claim arising out of a pre-petition contract does not accrue or mature until after the petition date, that claim still constitutes a debt arising pre-petition and is subject to the discharge." *In re Moreno*, 479 B.R. at 564 (citations omitted). Accordingly, any liability of the Debtors to the Bank to pay for force-placed insurance that existed under the loan agreement or deed of trust was a prepetition debt that was discharged, regardless of when the Bank

purchased the insurance.

Lastly, the Debtors allege that the Bank made an estimated 30 or more telephone calls to them "in each of which the [Bank's] representatives made assertions that [the Debtors] remained responsible for the debt and/or had a duty to perform other contractual obligations or they would be held financially responsible for the failure to do so." No specific information regarding these alleged calls was supplied in the amended complaint and the Bank asserts that this lack of detail is fatal under the Supreme Court's interpretation of Rule 12(b)(6) in *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007) (To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."). While greater specificity would be in order if the Debtors were to continue to pursue their claims in an adversary proceeding, the court declines to apply Rule 12(b)(6) standards to allegations that would generally be sufficient in the context of a motion initiating a contested matter.

V.

For the reasons set forth above, the Debtors' adversary proceeding will be dismissed without prejudice and with leave for the Debtors to file a motion for contempt as a contested matter in the underlying bankruptcy case.

# # #